UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KELLY PALMER,                          )
                                       )
                    Plaintiff,         )
                                       )
            v.                         )        No. 1:20-cv-01657-JRS-DLP
                                       )
TRAVELERS INDEMNITY COMPANY OF         )
AMERICA,                               )
STANDARD FIRE INSURANCE                )
COMPANY,                               )
                                       )
                    Defendants.        )

**Order on Motion for Judgment on the Pleadings and Motions for Partial
Summary Judgment**

Plaintiff Kelly Palmer sued her insurer, The Standard Fire Insurance Company,

and the alleged third-party administrator of the insurance policy, The Travelers

Indemnity Company of America, in connection with injuries she sustained in a car

accident.  She alleges the Defendants breached the insurance policy and the duty of

good faith by mishandling her claim for underinsured motorist coverage.  Only the

bad faith claim is presently before the Court.  Travelers moved for judgment on the

pleadings on that claim, (ECF No. 48), and both Standard and Palmer moved for

partial summary judgment, (ECF Nos. 50, 55).  For the following reasons, the Court

grants Travelers' motion, grants Standard's motion, and denies Palmer's motion.

**Background**

Palmer suffered various injuries from a car accident that occurred on May 27,

2018.  (Compl. ¶¶ 6–8, ECF No. 1-1.)  It was determined that the other driver was at

1

fault, and Palmer received the policy limit of $25,000 from the driver's insurer.  (*Id.* at ¶ 9.)

At the time of the accident, Palmer had an insurance policy with Standard that provided for underinsured motorist coverage of $250,000 per person.  (*Id.* at ¶¶ 10–14; ECF No. 49-1 at 2.)  Because Palmer claimed damages in excess of the $25,000 she received from the at-fault driver's insurer, she filed a claim with Standard. (Compl. ¶ 14, ECF No. 1-1.)

Travelers employees handled the evaluation of Palmer's claim on behalf of Standard.  (Pl.'s Resp. 2–3, ECF No. 56 (citing Marshall Dep. 36–37, 181, ECF No. 55-2 at 3–4, 18.))  After much back-and-forth, the Travelers representative offered Palmer $50,000.  (Compl. ¶ 16, ECF No. 1-1.)  Palmer found this offer unreasonable and filed suit two months later.  She alleges the Defendants breached the duty of good faith by unreasonably delaying and failing to properly pay her claim. (Compl. ¶¶ 17–28, ECF No. 1-1.)

## Discussion

### A. Travelers' Motion for Judgment on the Pleadings

Travelers moved for judgment on the pleadings on Palmer's bad faith claim.  (ECF No. 48.)  "To survive a motion for judgment on the pleadings, a complaint must 'state a claim to relief that is plausible on its face.'"  *Wagner v. Teva Pharms. USA, Inc.*, 840 F.3d 355, 357–58 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court can consider documents attached to the complaint and documents that are critical to the complaint and referred to in it; here, that includes

Palmer's insurance policy. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The Court takes all well-pleaded allegations as true and draws all reasonable inferences in the non-moving party's favor. *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013).

As the Court's jurisdiction is based on diversity of citizenship, the Court applies state law to the substantive issues in the case. *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The parties agree that Indiana law governs. Therefore, the Court applies the law that would be applied by the Indiana Supreme Court; if the Indiana Supreme Court has not spoken on the issue, the Court treats decisions by the Indiana Court of Appeals as authoritative, unless "there is a compelling reason to think" that the Indiana Supreme Court "would decide the issue differently." *Id.*

Indiana law recognizes that there is a "legal duty implied in all insurance contracts that the insurer deal in good faith with its insured" and that a "cause of action in tort [exists] for the breach of that duty." *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 517–18 (Ind. 1993). The Indiana Supreme Court reasoned that breach of the insurer's duty to deal in good faith with the insured constitutes a tort because of the "special relationship" between the insurer and insured:

> Clearly, a relationship exists between an insurer and its insured because they are in privity of contract. However, the existence of a contract, standing alone, does not give rise to the required "special relationship" to support imposition of a tort duty. Rather, it is the unique character of the insurance contract which supports the conclusion that there is a "special relationship." This contractual relationship is at times a traditional arms-length dealing between two parties, as in the initial purchase of a policy, but is also at times one of a fiduciary nature . . .

3

and, at other times, an adversarial one, as here in the context of a first-party claim . . . Given the *sui generis* nature of insurance contracts, then, we conclude that it is in society's interest that there be fair play between insurer and insured.

*Id.* at 518–19. Palmer admits that Standard is the sole insurer of her policy and that Travelers is not a party to the policy; therefore, Travelers and Palmer do not have a contractual relationship between "insurer and insured" within the meaning of *Erie*. (Pl.'s Resp. 2, ECF No. 56.)  Nevertheless, Palmer contends that Travelers can be liable for acting in bad faith due to the "fiduciary" language in *Erie*.  She asserts that since Travelers was the third-party administrator of the policy that was responsible for making decisions about her claim, it owed her a fiduciary duty of good faith.  (*Id.*) In support, she cites *Sieveking v. Reliastar Life Ins. Co.*, No. 4:08-cv-0045-DFH-WGH, 2009 WL 1795090, at *2 (S.D. Ind. June 23, 2009), and three other district court cases that cite *Sieveking*.  *Sieveking* held that a plaintiff seeking benefits under a disability insurance policy could sue a third-party administrator under Indiana law for breach of the covenant of good faith and fair dealing, despite the third-party administrator not being a party to the insurance contract.  *Id.*  In three sentences, the *Sieveking* court cited *Erie* for the propositions that the tort of bad faith is "not based entirely on privity of contract" and the "relationship of insurer to insured is at times fiduciary in nature," then concluded that since the defendant was the administrator of the plaintiff's claim and employed those who made the decisions to deny the plaintiff's claim, it owed the plaintiff a fiduciary duty to administer the claim in good faith.  *Id.*

Respectfully, the Court finds that this misreads *Erie* and other Indiana and Seventh Circuit case law.  The Indiana Supreme Court has made clear that the fiduciary language relates to the relationship *between the insurer and insured because of their contract*; it is not a freestanding fiduciary duty independent of a contractual relationship.  *Erie* itself illustrated this point, emphasizing that there is a "legal duty implied in all insurance *contracts* that the *insurer* deal in good faith with its *insured*" and that the tort of bad faith was appropriate "[g]iven the *sui generis* nature of insurance *contracts*" and that the "*contractual relationship* is . . . at times one of a fiduciary nature."  *Erie*, 622 N.E.2d at 518–19 (emphasis added).  This was reiterated in *Cain v. Griffin*, 849 N.E.2d 507, 515 (Ind. 2006), where the Indiana Supreme Court concluded that a third-party beneficiary of an insurance contract and the insurer did not have the "special relationship" described in *Erie* that would impose a duty of good faith on the insurer:

> We found in Erie that an insurer and its insured have a special relationship that imposes on the insurer a duty of good faith dealing because of the arms-length *contractual relationship* between the two parties, *the fiduciary nature of the contract*, and the potentially adversarial nature of first-party claims that may occur *as a result of the contractual relationship* between the parties . . . The relationship between a third-party beneficiary and the insurer is not one *intentionally created by a close, fiduciary, or potentially adversarial contract* and, as such, is not the "special relationship" anticipated by this Court in *Erie*.

*Cain*, 849 N.E.2d at 515 (emphasis added).  The same is true here: the relationship between Palmer and Travelers is not one "intentionally created by a close, fiduciary, or potentially adversarial contract and, as such, is not the 'special relationship'" necessary to impose a duty of good faith.  *Id.* (emphasis added); *Erie*, 622 N.E.2d at

5

518; *see also Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 879 (7th Cir. 1999) (quoting *Erie*, 622 N.E.2d at 518) (noting that "[a]s the Indiana Supreme Court made clear when it first recognized the tort of bad faith denial of insurance claims, the duty arises from the 'unique character of the insurance contract' itself" and holding that individual not in privity of contract with the insured did not owe a duty of good faith); *Troxell v. Am. States Ins. Co.*, 596 N.E.2d 921, 925 n.1 (Ind. Ct. App. 2015) (insurance adjuster is agent of insurer and, with no direct relationship with the plaintiff, owes plaintiff no duty).  It is the Indiana Supreme Court's application of the law, not that of the *Sieveking* court, that guides the Court, and its application in this area leads the Court to conclude that Travelers did not owe a special duty to Palmer on which the bad faith tort could be based.  *Thomas v. H & R Block E. Enters., Inc.*, 630 F.3d 659, 663 (7th Cir. 2011) (the court's role when sitting in diversity is to "ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now"); *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 James Wm. Moore et al., Moore's Federal Practice § 134.02[1][d] (3d ed. 2011)) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

Further, the Seventh Circuit's decision in *Lodholtz v. York Risk Services Group, Inc.*, 778 F.3d 635 (7th Cir. 2015), by which this Court is bound, bolsters this conclusion.  *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092 (7th Cir. 1999) (Seventh Circuit's rulings in diversity cases are controlling upon federal district

courts until a higher state court contradicts the decision).  The *Lodholtz* court determined that an insurance claims adjuster—like Travelers here—"owes no legal duty to the insured" and therefore could not be liable for negligence.  *Lodholtz*, 778 F.3d at 637.  While the claim was for negligence, rather than bad faith, the court's reasoning applies in the bad faith context.  Reasoning that under Indiana law, "the legal duty attached to an insurance claim flows from the parties' contractual obligations," and because the claims adjuster is "not a party to" the contract between the insured and insurer, the court concluded the adjuster's liability is "limited to the insurer," not the insured.  *Id.* at 642–43.  As Palmer admits, Travelers is "not a party to" the contract between her and Standard.  Without a contractual obligation, no legal duty flows, and Travelers cannot be liable for breaching the duty of good faith.  Therefore, Travelers' motion for judgment on the pleadings is granted.

### B. Standard and Palmer's Motions for Partial Summary Judgment

Standard does not deny that it owed Palmer a duty to deal in good faith, but it denies that it breached that duty.  It moved for summary judgment on Palmer's bad faith claim, (ECF No. 50), and Palmer filed a cross-motion for partial summary judgment, (ECF No. 55).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If no reasonable

jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

To prevail on a bad faith claim, a plaintiff must prove the insurer: "(1) made an unfounded refusal to pay policy proceeds; (2) caused an unfounded delay in making payment; (3) deceived the insured; or (4) exercised an unfair advantage over the insured to pressure the insured into settling its claim." *Brandell v. Secura Ins.*, 173 N.E.3d 279, 284 (Ind. Ct. App. 2021) (citing *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993)). "Poor judgment and negligence do not amount to bad faith; there must also be the additional element of conscious wrongdoing." *Id.* (citing *Colley v. Ind. Farmers Mut. Ins. Grp.*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998) ("A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will.")) Palmer asserts that Standard took all four of these prohibited actions.

### 1. Unfounded Delay

Palmer contends Standard breached the duty of good faith by "causing an unfounded delay in making payment." *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993). The parties quarrel about whether the insurer or insured has the burden to investigate and "prove" a claim for damages. But the evidence shows that even if Standard had this burden, it satisfied it and did not "caus[e] an unfounded delay" in

making payment.  Any delay was either due to Palmer's conduct or Standard's reasonable request for records, and therefore was not "unfounded."

       a. *Additional Background*

Erin Fowler, the employee who handled Palmer's claim, began working on Palmer's case on October 18, 2018.  (ECF No. 51-3 at 4.)  In her initial communication to Palmer's attorney, she requested, among other things, medical bills related to the accident and a signed form authorizing the release of Palmer's medical records from healthcare providers directly to Standard.  (ECF No. 51-3 at 4–8.)  Palmer responded with various medical records and bills but not the signed authorization form.  (ECF No. 55-8.)  Three weeks later, Fowler received Palmer's permission to view the medical records and bills that were submitted for Palmer's claim for medical payments coverage, and Standard later paid Palmer $5,000 in medical payments coverage, pursuant to the policy.  (ECF No. 51-2 at 36.)

Palmer provided updated bills on November 7.  (ECF No. 55-9.)  Fowler replied on November 13, indicating she needed complete medical bills and records for treatment related to the accident, as well as any lien Palmer's health insurance might have.  (ECF No. 51-3 at 9.)  Fowler followed up on this request on December 1, 2018, again on January 11, 2019, and again on February 11, 2019.  (ECF No. 51-2 at 38–41.)  Fowler indicated that she knew Palmer was still receiving treatment, so she needed updated bills, and she still needed the health insurance lien.  (*Id.*)  On February 21, 2019, Palmer provided medical records for treatment she received with her current neurologist, Dr. Snook, between July 2, 2018, and October 4, 2018.  (ECF No. 51-3 at

10; Fowler Aff. ¶ 6, ECF No. 51-3 at 2.)  The same day, Fowler reviewed those records, determined that Palmer's prior medical records were needed to establish her baseline condition before the accident, and requested five years of prior medical records relating to treatment for injuries similar to those sustained in the accident.  (ECF No. 51-3 at 11.)  Fowler followed up on this request on March 4 and April 15.  (ECF No. 51-2 at 44–45.)  Palmer replied on April 16, indicating she was still receiving treatment and gathering records.  (ECF No. 51-2 at 45.)

On April 26, 2019, Palmer sent updated medical records from Dr. Snook and indicated she was still receiving treatment.  (ECF No. 55-10.)  On June 18, 2019, Fowler requested up-to-date bills to reflect Palmer's continued treatment, as well as the health insurance lien.  (ECF No. 51-3 at 12.)  Fowler followed up on August 19.  (ECF No. 51-2 at 49.)  On October 30, Palmer provided a letter from Dr. Snook, indicating Palmer sustained a concussion in the accident; was diagnosed with post concussive syndrome, which can have symptoms for two to three years; and had been experiencing unremitting headaches that were "directly related" to the accident.  (ECF No. 51-3 at 14.)  On November 7, Fowler indicated that despite receiving Dr. Snook's letter, she still needed the five years of prior medical records, updated bills and records for treatment, and the health insurance lien.  (ECF No. 51-3 at 15.)  Fowler reiterated this request on December 3, 2019, and January 28, 2020.  (ECF No. 51-3 at 18–19.)  She noted that the last medical bill she had received was for treatment on July 2, 2018.  (*Id.*)

On January 31, 2020, Palmer provided the prior medical records Fowler had requested, relating to neurology treatment Palmer had received before the accident. (ECF No. 51-3 at 20; Fowler Aff. ¶ 14, ECF No. 51-3 at 3.)  Fowler replied on February 21, reattaching a copy of her previous request and noting that she still needed updated medical bills and records for Palmer's continued treatment, as well as the health insurance lien.  (ECF No. 51-3 at 21–23.)

On March 3, 2020, Palmer provided records from Dr. Snook; a health insurance lien of nearly $7,000, dated August 30, 2019; and medical bills showing a total amount billed to Palmer's health insurance of about $60,000.  (ECF No. 51-3 at 24–28.) Palmer followed up on March 10 and March 19.  (ECF No. 55-11, ECF No. 51-3 at 29.)

Fowler replied on March 19.  She stated that she needed complete records for Palmer's pre-accident neurological care, as the last record she had received was dated nearly three years before the accident; pre-accident medical records related to Palmer's treatment for anxiety, depression, and attention-deficit disorder ("ADD"); and updated health insurance liens and bills, as the ones Palmer provided on March 3 only reflected services through February 25 and August 30, 2019, but Palmer had received treatment after those dates.  (ECF No. 51-3 at 31.)  Despite not having complete information, Fowler offered Palmer $50,000 in underinsured motorist coverage.  (ECF No. 51-2 at 53–54.)  Fowler noted that since Palmer's last pre-accident neurology record was from three years before the accident, she was not able to determine whether Palmer's headaches were under control at the time of the accident.  (*Id.*)  Fowler also indicated the same concern about Palmer's anxiety and

memory issues, as it appeared Palmer had experienced those issues prior to the accident but had not taken medication for them.  (*Id.*)  Fowler stated she could adjust her offer if she received updated information.  (*Id.*)

On April 13, 2020, Palmer communicated that the previously provided pre-accident neurology records were complete.  (ECF No. 51-3 at 32.)  Palmer responded to Fowler's anxiety and depression concerns by stating that she was only prescribed medication for brief periods after she received an organ transplant and after the accident.  (*Id.*)  The next day, Palmer provided an updated health insurance lien showing a total amount billed of about $101,000 and a total amount paid of nearly $17,000.  (ECF No. 51-3 at 34–38.)

On May 2, 2020, Fowler replied.  She indicated that she needed the medical bills and records associated with the updated health insurance lien Palmer had provided.  (ECF No. 51-3 at 41.)  She also said that Palmer's statements that the pre-accident neurology records were complete and that Palmer only took medication for anxiety and depression for certain brief periods were contradicted by "medical records provided by [Palmer's attorney's] office."  (*Id.*; *see also* Standard's Br. 19, ECF No. 52.)  Finally, Fowler noted Palmer also had the option of providing a signed medical authorization form to allow Standard to obtain medical records directly.  (*Id.*)  Palmer filed suit less than two weeks later.  (Compl., ECF No. 1-1.)

       b.  *Analysis*

The crux of Palmer's "unfounded delay" argument is that Standard "saddl[ed her] with its investigative duties" by endlessly requesting "unnecessary documents" that

it "never attempted to obtain" on its own. (Pl.'s Resp. 18, ECF No. 55; Pl.'s Surreply 6, ECF No. 71.)

To start, Palmer's assertion that Standard never attempted to obtain documents or information on its own is not supported by the evidence—in Fowler's initial communication to Palmer on October 18, 2018, she included an authorization form that would allow Standard to receive Palmer's medical records directly from Palmer's health care providers, but Palmer did not complete or return the form. (ECF No. 51-3 at 4–6.) Fowler reiterated that an authorization form was an option again on May 2, 2020. (ECF No. 51-3 at 41.) Without the form, Standard had to request the documents it needed to evaluate Palmer's claim through Palmer directly.

Palmer also contends that Standard's "vague and repeated" requests for unnecessary documents amounted to an improper "fishing expedition" aimed at delaying the investigation and evaluation of Palmer's claim. (Pl.'s Resp. 6–7, ECF No. 55; Pl.'s Surreply 7, ECF No. 71.) But an insurer does not act in bad faith when there is "no indication that [it] caused an unfounded delay in making payment or that [it] acted with ill will or conscious wrongdoing by delaying any payments until [the insured] complied with the provisions of his insurance policy or until [the insurer] could obtain complete medical and wage information to evaluate the claim." *Allstate Ins. Co. v. Fields*, 885 N.E.2d 728, 734 (Ind. Ct. App. 2008) (quotation omitted) (granting insurer's motion for summary judgment on bad faith claim). Standard needed Palmer's complete medical information to evaluate her claim. And its requests were not "unnecessary." The health insurance liens reflected how much

Palmer's health insurance actually paid for Palmer's treatment, which Fowler used in calculating Palmer's offer and which is a relevant factor in determining medical expenses. *See, e.g.*, *Stanley v. Walker*, 906 N.E.2d 852, 858 (Ind. 2009) (proper measure of medical expenses in personal injury action is their "reasonable value"; both the actual amount paid and the amount originally billed may help jury determine the reasonable value). Palmer did not provide a health insurance lien until March 3, 2020, and that lien was dated August 30, 2019. (ECF No. 51-3 at 24–25.) Nevertheless, Fowler made an offer less than three weeks later, on March 20, 2020. (ECF No. 51-2 at 53–54.)

Similarly, Standard's request for Palmer's prior medical records was not unreasonable; an insurer can examine an insured's medical history to determine the extent of injuries resulting from the accident versus those that were pre-existing. *See, e.g.*, *Watt v. State Farm Mut. Auto. Ins. Co.*, No. 2:03-CV-137, 2006 WL 2798103, at *9–11 (N.D. Ind. Sept. 28, 2006) (granting insurer's motion for summary judgment on unfounded delay claim; noting that "the insurer has no duty to promptly pay all claims without investigation" and finding insurer did not act unreasonably when investigating further to determine whether insured's alleged injury was actually caused by the accident); *cf. New Berean Missionary Baptist Church, Inc. v. State Farm Fire & Cas. Ins. Co.*, No. 1:08-cv-1584, 2010 WL 2010464, at *6 (S.D. Ind. May 18, 2010) (denying insurer's motion for summary judgment as a "close" case when insurer might have insisted on obtaining information *it did not need* and/or *was not entitled to* and then *denied the insured's claim* when the insured failed to produce the

information).  Fowler noted that Palmer experienced headaches and anxiety in the aftermath of the accident—but Palmer also experienced those issues before the accident.  Postponing payment while attempting to secure Palmer's pre-accident medical records does not amount to an "unfounded delay."  That is true even though some of Fowler's requests for documents arose during the course of her investigation and evaluation, rather than in her initial request.  *See Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 ("[A] good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith.").

Moreover, the "ill will or conscious wrongdoing" demonstrated by an intent to delay payment is simply not present here.  Not only is "the lack of diligent investigation alone" insufficient to support a finding of bad faith, *Erie*, 622 N.E.2d at 520, but the evidence shows that Fowler was diligent.  Fowler repeatedly followed up on her requests, even when Palmer was unresponsive.  (*See, e.g.*, ECF No. 51-2 at 36–41 (Fowler following up on her November 13, 2018 request for complete medical bills and records and the health insurance lien on December 1, 2018; January 11, 2019; and February 11, 2019); ECF No. 51-2 at 44–45 (Fowler following up on her February 21, 2019 request on March 4 and April 15.))  Fowler reiterated that she could not complete her evaluation of Palmer's claim without the requisite information.  (*See, e.g.*, ECF No. 51-3 at 9 (noting that she was "unable to complete" the evaluation and that she would need the requested information "in order to" complete her evaluation, and requesting Palmer forward these documents at her "earliest convenience")); *see*

*Allstate Ins. Co. v. Fields*, 885 N.E.2d 728, 733 (Ind. Ct. App. 2008) (noting that insurer's claim adjuster stated that he "did not desire to delay in the handling of this claim" as part of conclusion that insurer did not act in bad faith).  Despite not having all the information, Fowler made an offer, explained her limitations in making a higher offer due to the missing information, and indicated she could adjust the offer if she received additional information.  (ECF No. 51-2 at 53–54.)  As a matter of law, Standard did not act in bad faith by "causing an unfounded delay in making payment."  *Erie*, 622 N.E.2d at 519; *see also Emps. Mut. Cas. Co. v. Skoutaris*, 453 F.3d 915, 926 (7th Cir. 2006) (insurer did not breach duty of good faith when it valued amount of property loss "based on the limited information available to it" and repeatedly asked insured for additional information).

   2.  <u>Unfounded Refusal to Pay</u>

   Under this theory, bad faith arises when the plaintiff's claim is wrongfully denied or underpaid and the insurer "knows there is 'no rational, principled basis,'" for doing so.  *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 891 (7th Cir. 2011) (quoting *Erie*, 622 N.E.2d at 520).  "[T]he plaintiff must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability."  *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002) (citation omitted).  Palmer argues that Standard lacked a "rational, principled basis" for offering her $50,000 to resolve her underinsured motorist coverage claim.  However, the evidence demonstrates that Standard had such a basis.

Fowler testified that in making the $50,000 offer, she considered Palmer's prior medical status and medical history; her history as a transplant survivor; the injuries she sustained in the accident; whether her previous medical issues could have been exacerbated by the accident; the medical bills; the amount paid by Palmer's health insurance, which was nearly $7,000 at the time; and the fact that Palmer had received $25,000 from the at-fault driver's insurer and $5,000 in medical payments coverage from Standard.  (Fowler Dep. 116–17, ECF No. 51-2 at 7.)  Fowler noted that she still had "unanswered questions" about the extent of Palmer's pre-existing medical issues versus those caused by the accident, so she made the offer as a "starting point" while seeking additional information from Palmer about her pre-existing issues.  (*Id.*)

Palmer takes issue with two aspects of Fowler's process.  First, Palmer asserts that Fowler improperly discounted Palmer's doctor's report.  Second, Palmer faults Fowler for not considering Palmer's "total medical expenses."  Rather than looking at the total amount *billed* by Palmer's healthcare providers—around $60,000 at the time—Fowler considered the amount *paid* by Palmer's health insurance—around $7,000 at the time.  (ECF No. 51-3 at 25, 28.)  However, it cannot be said that Fowler had "no rational, principled basis" for taking these actions or for making the $50,000 offer.

Palmer's argument about the doctor's report refers to a letter sent by Dr. Snook, who has been treating Palmer for her headaches since the accident.  (ECF No. 51-3 at 42.)  In the letter, Dr. Snook notes that Palmer sustained a concussion from the accident, was diagnosed with post concussive syndrome, and suffers unremitting

17

headaches that are "directly related to" the accident.  (ECF No. 51-3 at 42.)  While reviewing Palmer's claim, Fowler learned that Palmer had a history of migraines and had been seeing a different neurologist for headache treatment before the accident. (Fowler Dep. 130, ECF No. 51-2.)  Fowler had requested the prior neurologist's records to establish a baseline of Palmer's migraine history to determine what injuries stemmed from the accident, but believed Palmer had provided incomplete records.  (*Id.* at 130–35; *see also* ECF No. 51-3 at 31.)  In essence, Palmer argues that Fowler should have accepted Dr. Snook's statement that the headaches were "directly related to" the accident, should not have questioned whether Dr. Snook's evaluation considered Palmer's history of migraines, and should have valued Palmer's claim at a higher amount accordingly.

However, Fowler did not lack a "rational, principled basis" for this action.  Palmer arrived at the emergency room after the accident and indicated that she had been receiving treatment with the prior neurologist for headaches.  (Fowler Dep. 135, ECF No. 51-2.)  The last medical record Fowler received from the prior neurologist was dated three years before the accident, so Fowler believed records were missing and requested complete ones (although Palmer later confirmed the records provided were complete).  (ECF No. 51-2 at 54; ECF No. 51-3 at 32.)  It cannot be said that Fowler had "no rational, principled basis" for her course of action.  *See Michel v. Am. Fam. Mut. Ins. Co.*, No. 2:08-CV-331, 2010 WL 3039506, at *5 (N.D. Ind. Aug. 2, 2010) (insurer entitled to summary judgment on bad faith claim when insured had pre-existing injuries similar to those that allegedly resulted from accident; not

18

unreasonable for insurer to assess insured's injuries "mindful of those preexisting conditions"); *Backwater, Inc. v. Penn-American Ins. Co.*, 448 F.3d 962, 964 (7th Cir. 2006) (affirming summary judgment on bad faith claim because insurer had rational basis to deny coverage; in deciding whether to grant or deny property insurance coverage, insurer was "free, within the constraints of reason and good faith, to evaluate the evidence and draw its own conclusion" about the source of vandalism); *O'Boy v. State Farm Mut. Auto. Ins. Co.*, No. 2:04-CV-441, 2006 WL 1660750, at *7 (N.D. Ind. June 13, 2006) (insurer had rational basis for offer when it paid virtually all of plaintiff's medical expenses and plaintiff suffered pain that was symptomatic of her pre-existing medical conditions).

Even assuming Fowler did but should not have second guessed Dr. Snook's opinion, as Palmer and her expert witness assert, poor judgment or mere negligence does not amount to bad faith, and at most that is all that is present here. *Colley v. Ind. Farmers Mut. Ins. Grp.*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998); *cf. Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) (insurer's conduct amounted to an unfounded refusal to pay policy proceeds when it knew "from the very beginning" that insured was covered but denied claim anyway).

The same is true for Fowler's calculation of Palmer's medical expenses. The fact that Fowler found the amount actually paid by Palmer's health insurer, rather than the amount billed by the healthcare providers, more probative in evaluating Palmer's claim does not amount to bad faith. *See, e.g.*, *Stanley v. Walker*, 906 N.E.2d 852, 858 (Ind. 2009) (proper measure of medical expenses in personal injury action is their

"reasonable value"; both the actual amount paid and the amount originally billed may help jury determine the reasonable value).  Fowler did not lack a "rational, principled basis" for her offer simply because she used the lower of the two numbers.

Palmer also cites Defendants' failure to have another medical professional review the medical records or to ask Palmer to undergo a physical exam.  (Pl.'s Resp. 14, ECF No. 55.)  Even assuming these actions would have been helpful in evaluating Palmer's claim, an evaluation that was ongoing when suit was filed, "the lack of diligent investigation alone is not sufficient to support an award" for bad faith.  *Erie*, 622 N.E.2d at 520; *see also Wilson v. Am. Fam. Mut. Auto. Ins. Co.*, 683 F. Supp. 2d 886, 892 (S.D. Ind. 2010) ("[The insurer's] decision not to request an independent medical exam or interview additional witnesses certainly does not amount to bad faith.").

Finally, Fowler did not lack a "rational, principled basis" for not re-evaluating Palmer's claim during the month after Palmer provided additional information before she filed suit.  Fowler indicated that she was still missing requested documents and that Palmer's assertions about some of her pre-accident medical issues were contradicted by medical records.  (ECF No. 51-3 at 41.)  Fowler did not lack a "rational, principled basis" for not revising her $50,000 offer when she had not obtained accurate, complete medical information.

In sum, Indiana courts have made clear that "a good faith dispute about the amount of a valid claim" "will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith."  *Erie*, 622 N.E.2d at 520.  "That insurance companies may, in good faith, dispute claims, has long been the rule in

Indiana." *Id.* Indeed, Palmer does not cite a single case finding bad faith due to an insurer "underpaying" a claim. This case ultimately boils down to a "good faith dispute" about the value of Palmer's claim. Palmer thought her case was worth the balance of the policy; Fowler believed her offer was a fair one that could get negotiations rolling, noting she could adjust the offer if she received updated information. Ultimately, Fowler's offer, "even if wrong, misguided, or the result of poor judgment," *Michel v. Am. Fam. Mut. Ins. Co.*, No. 2:08-CV-331, 2010 WL 3039506, at *6 (N.D. Ind. Aug. 2, 2010), had a reasoned basis from her review of the materials: Palmer's medical history, the injuries sustained in the accident, the medical bills, the amount paid by Palmer's health insurance, and the payments Palmer had received from the at-fault driver's insurer and Standard. (Fowler Dep. 116–17, ECF No. 51-2.) On these facts, a reasonable jury could not find that Standard had "no rational, principled basis" for the offer it made. *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 891 (7th Cir. 2011) (quoting *Erie*, 622 N.E.2d at 520).

   3. Deceiving the Insured and Pressuring into Settling

Palmer also asserts that Standard breached the duty of good faith by "deceiving" her and her parents and by "exercising [an] unfair advantage to pressure" them into settling their claim. *Erie*, 622 N.E.2d at 519. Palmer refers to a call in which "some guy from Travelers called [Palmer's] mom," one of the policyholders, and "basically tried to force her to settle." (Palmer Dep. 71, ECF No. 55-4.) Palmer stated that this caused a conflict between her and her family because the call made Palmer's mother

feel "threatened that someone was going to cancel her insurance."  (Palmer Dep. 72, ECF No. 55-4.)

Travelers admits the call took place, but Palmer relies on her mother's recount of the conversation as evidence that any pressure or deception occurred; Palmer herself was not on the call.  (Palmer Dep. 71–73, ECF No. 55-4.)  "[A] court may consider only admissible evidence in assessing a motion for summary judgment," and a party "may not rely upon inadmissible hearsay to oppose a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).  Palmer's mother has not submitted an affidavit; therefore, Palmer's testimony about what her mother told her happened on the call is inadmissible hearsay and cannot be used to oppose Travelers' motion for summary judgment or to advance Palmer's. *Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512 n.3 (7th Cir. 2021) (rejecting evidence as inadmissible hearsay when person with personal knowledge was not deposed and plaintiff did not obtain an affidavit from him).

Palmer's assertion that she need not have personal knowledge of Travelers' statements because bad faith can be proved by circumstantial evidence, which is "evidence based on inference and not on personal knowledge or observation," (Pl.'s Surreply 10, ECF No. 71), is meritless.  True, intent can be proved by circumstantial evidence, but that does not eliminate the limitation that a party seeking to defeat summary judgment "may rely only on admissible evidence." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009); *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. 2014) ("[A] plaintiff seeking to thwart summary judgment

must comply with Federal Rule of Civil Procedure 56(e) and Federal Rule of Evidence 602, both of which require that testimony be based on personal knowledge.").  Even viewing the admissible facts in the light most favorable to Palmer, no reasonable jury could find that Standard sought to deceive or exercise an unfair advantage over Palmer to pressure her into settling her claim.  *Cf. Gooch v. State Farm Mut. Auto. Ins. Co.*, 712 N.E.2d 38, 40–41 (Ind. Ct. App. 1999) (insurer's actions could constitute bad faith when it intentionally failed to conduct more extensive investigation and continued to assert plaintiff was at fault despite plaintiff producing evidence otherwise in order to coerce plaintiff into settling).

4.   Punitive Damages

Palmer also seeks punitive damages in connection with Standard's conduct. (Compl. ¶¶ 27–28, ECF No. 1-1.)  "[I]n order to recover punitive damages in a lawsuit founded upon a breach of contract, the plaintiff must plead and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded"—like the tort of bad faith.  *Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 984 (Ind. 1993).  But since Palmer cannot show that Standard acted in bad faith, she cannot recover punitive damages.

## Conclusion

Travelers' motion for judgment on the pleadings, (ECF No. 48), is **granted**. Palmer's claim against Travelers for breach of the duty of good faith is **dismissed with prejudice**.  The Court does not grant leave for Palmer to amend her complaint

because amendment would be futile.  *See Loja v. Main St. Acquisition Corp.*, 906 F.3d 680, 684–85 (7th Cir. 2018).

Further, Palmer has "agree[d] to withdraw" her breach of contract claim against Travelers. (Pl.'s Resp. 2, ECF No. 56.)  Palmer does not specify whether this dismissal should be with or without prejudice.  Under Federal Rule of Civil Procedure 41(a)(2), the Court may dismiss an action at the plaintiff's request "upon such terms and conditions as the court deems proper."  Fed. R. Civ. P. 41(a)(2); *see also Babcock v. McDaniel*, 148 F.3d 797, 799 (7th Cir. 1998) (when proposal of dismissal did not specify whether dismissal is with or without prejudice, district court was required to interpret the proposal one way or the other).  As Palmer admits that "Defendant Travelers is not a party" under the insurance policy, (Pl.'s Resp. 2, ECF No. 56), and because only a party to the contract can be liable for breach of contract, *Rodriguez v. Tech Credit Union Corp.*, 824 N.E.2d 442, 447 (Ind. Ct. App. 2005), the Court dismisses Palmer's breach of contract claim against Travelers **with prejudice**. Travelers shall be **terminated** from this action.

As to the bad faith claim against Standard, Standard's motion for partial summary judgment, (ECF No. 50), is **granted**, and Palmer's motion for partial summary judgment, (ECF No. 55), is **denied**.  Palmer's claim against Standard for breach of the duty of good faith is **dismissed with prejudice**.

The Court requests that the Magistrate Judge meet with the parties to discuss settlement on Palmer's remaining claim.

**SO ORDERED.**

Date: 11/29/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to registered parties of record via CM/ECF.